UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARVIN R. HOGLUND,<br><br>                    Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>                    Defendant. | Case No. C13-1144-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

Marvin R. Hoglund appeals the denial of his benefits application, contending the ALJ erroneously discounted (1) his testimony about the severity of his limitations, and (2) the opinions of Gary Gaffield, D.O., and Dennis Koukol, M.D.  Dkt. 12 at 2.  Because the ALJ provided legitimate reasons to discount Mr. Hoglund's testimony and Drs. Gaffield's and Koukol's opinions, the Court, as discussed below, recommends **AFFIRMING** the Commissioner's decision and **DISMISSING** the case with prejudice.

## BACKGROUND

The ALJ's finding that Mr. Hoglund was not disabled hinges on her step two assessment. At step two of the five step disability evaluation process, the ALJ determined that although restless leg syndrome ("RSL"); weakness of right arm, forearm, and wrist; dysthymia; and

REPORT AND RECOMMENDATION - 1

anxiety disorder, NOS were medically determinable impairments, they did not significantly limit Mr. Hoglund's ability to perform basic work activities for at least 12 months. Tr. 26. The ALJ accordingly concluded, at step two, that Mr. Hoglund was not disabled because he had no severe impairment or combination of impairments. *Id.* The parties agree the ALJ's decision is the Commissioner's final decision.

## DISCUSSION

**A.     The ALJ did not err in assessing the medical evidence**

Mr. Hogland argues that "the ALJ's error can be summed up as a failure to properly evaluate the medical evidence in favor of a determination based solely on a finding he is not credible." Dkt. 12 at 4. In specific, he argues the ALJ erred in discounting the opinions of Dr. Gaffield, an examining doctor, and Dr. Koukol, a reviewing doctor who based his opinions on Dr. Gaffield's opinions.[1] *Id.* at 18. The ALJ detailed Dr. Gaffield's opinion that Mr. Hoglund had upper extremity limitations, lifting and carrying limitations, and other postural, manipulative and environmental limitations. Tr. 30. The ALJ, however, gave little weight to the doctor's opinions for five reasons.

First, the ALJ determined the doctor's opinions were inconsistent with Mr. Hoglund's work history. The ALJ noted that despite undergoing multiple surgeries to the upper extremity, the record showed Mr. Hoglund returned to fulltime work as a Boeing forklift operator, a job requiring him to lift up to 50 pounds. Tr. 27, 30. The ALJ further noted that Mr. Hoglund lost this job not because of his alleged impairments but because he combined alcohol with his medications and crashed his forklift. *Id.* An ALJ provides clear and convincing reasons to reject

---

[1] The ALJ discounted Dr. Koukol's opinions on the grounds that they relied on Dr. Gaffield's opinions. Tr. 30. Because the ALJ's decision to give little weight to Dr. Gaffield's opinions is supported by substantial evidence, the ALJ also properly discounted Dr. Koukol's opinions.

REPORT AND RECOMMENDATION - 2

a doctor's opinion where a claimant's work history is inconsistent with the limitations opined by the doctor. *Cf. Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming rejection of medical opinion because proffered limitations were inconsistent claimant's level of activity in maintaining household and raising children); *see also Bjordal v. Astrue*, No 06:09–cv–01216–TC, 2011 WL 4625752, at *5-6 (D. Or. July 29, 2011) (rejecting examining doctor's opinions as inconsistent with the plaintiff's work history, among other things).

Here, the Court cannot say that the ALJ unreasonably found that Mr. Hoglund's work activities at Boeing were inconsistent with the limitations assessed by Dr. Gaffield, and Mr. Hoglund does not specifically argue otherwise. Instead, he contends the ALJ's analysis is flawed because it "ignores evidence that it was the symptoms of RSL that led to Mr. Hoglund requiring medication which he mixed with alcohol after failing to read a warning against that." Dkt. 12 at 20. This argument implies that Mr. Hoglund had side effects from his medications, which the ALJ erroneously failed to consider in assessing his limitations. *See, e.g.*, *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993) (in determining RFC, the ALJ must consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications). The argument fails, however, because this is not a case in which Mr. Hoglund's limitations can be fairly attributed to his medications. Rather, Mr. Hoglund crashed his forklift at Boeing by *misusing* his medications, which his doctor prescribed "for bedtime/qhs[2] only," and by mixing the medications with alcohol despite the warning label on the medication not to do so.[3] Tr. 202. Accordingly, the Court concludes Mr. Hoglund's misuse of his prescribed

---

[2] "QHS," or *quaque hora somni*, means every night at bedtime.

[3] Mr. Hoglund also contends the ALJ's reliance on his work at Boeing does not account for medical evidence showing his limitations worsened thereafter. Dkt. 12 at 20. However, as discussed below, this contention is not supported by the record.

REPORT AND RECOMMENDATION - 3

medications is not a factor that the ALJ erroneously failed to account for in relying on work history to discount Dr. Gaffield's opinions.[4]

Second, the ALJ discounted Dr. Gaffield's opinions as "inconsistent with the claimant's treatment notes." Tr. 30.  Mr. Hoglund claims error based on arguments that do not specifically address the ALJ's finding; instead, he argues that the lack of objective evidence cannot be the sole reason to discount a claimant's subjective claims and that the lack of treatment is an invalid reason to discount the doctor's findings. Dkt. 12 at 20-21.  These arguments sidestep the ALJ's determination that "Dr. Gaffield's opinion is inconsistent with the claimant's treatment notes, which document normal examinations of the extremities, and no complaints or treatment for any arm problems until August 2011." Tr. 30.  As an ALJ may give less weight to an opinion that is inconsistent with other evidence in the record, the ALJ properly discounted Dr. Gaffield's opinions as inconsistent with Mr. Hoglund's treatment notes.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  Mr. Hoglund has not established the ALJ was incorrect in so finding, and the Court thus will not disturb the ALJ's determination.

Mr. Hoglund also challenges the ALJ's determination that Dr. Gaffield's opinions were inconsistent with his treatment notes, arguing the ALJ should have expanded the record because the evidence was insufficient to make a disability determination. Dkt. 12 at 21.  This argument fails.  An ALJ's duty to expand the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  There is no ambiguity here, simply disagreement over the

---

[4] The Court also notes this case does not involve drug or substance abuse requiring the analysis set forth in *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001), and  20 C.F.R. §§ 404.1535(a), 416.935(a).

REPORT AND RECOMMENDATION - 4

assessment of the evidence.[5]  Moreover, the record is adequate in that it includes treatment records and the opinon of an examining doctor.

Third, the ALJ discounted Dr. Gaffield's opinion as inconsistent with the certification Mr. Hoglund submitted to the State of Washington Employment Security Department that he was able and willing to accept any suitable work offered him.  Tr. 30.  Although, this may be grounds to discount a claimant who testified he was disabled, it is not grounds, to discount Dr. Gaffield's opinion because Dr. Gaffield did not opine Mr. Hoglund was disabled.  *See* Tr. 235.  Hence, there is no inconsistency between Dr. Gaffield's opinions, which indicated Mr. Hoglund has some capacity to work, and Mr. Hoglund who indicated to the Employment Security Department that he sought some type of work.  The ALJ thus erred in relying on this ground to discount Dr. Gaffield's opinions.

Fourth, the ALJ discounted Dr. Gaffield's opinions as inconsistent with Mr. Hoglund's activities, which included "golfing, racing dirt bikes, skiing, playing baseball, cooking cleaning, and preparing meals."  Tr. 30.  Mr. Hoglund contends that he greatly reduced or stopped engaging in his hobbies years ago and that the ALJ therefore erred in relying on his physical activities to discount the doctor's opinions.  Dkt. 12 at 22 (referring to pages 14-18).  Mr. Hoglund is correct that the record contain varying accounts about whether he continued with his hobby activities.  For instance, Mr. Hoglund claimed to have stopped or reduced his activities, but David Sandvick, M.D., noted in October 2010, that "in the winter he goes skiing," and "he likes to ride dirt bikes on occasion, which he did 2 weeks prior to the interview."  Tr. 206.  But it is the ALJ's prerogative to resolve conflicts and ambiguities, *Andrews v. Shalala*, 53 F.3d 1035,

---

[5] Mr. Hoglund's claim that 20 C.F.R. §§ 404.1519a and 404.1545(a)(3) compel expansion of the record is unpersuasive in light of the fact that the medical record was sufficient for the ALJ to make a disability determination.

REPORT AND RECOMMENDATION - 5

1039 (9th Cir. 1995), and while the Court must examine the entire record, it cannot reweigh the evidence or substitute its judgment for that of the ALJ, *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Mr. Hoglund contends otherwise, arguing Dr. Sandvick's report is "ambiguous," Dkt. 12 at 15, but this argument finds little support in the record given the plain and unambiguous language Dr. Sandvick used, *see* Tr. 206.  The Court accordingly finds the ALJ reasonably concluded that the evidence showed Mr. Hoglund's activities were inconsistent with the limitations found by Dr. Gaffield.

      And finally, the ALJ discounted Dr. Gaffield's opinions on the grounds that it appeared he gave "great weight to the claimant's self-reported limitations," which the ALJ found "not fully credible." Tr. 30.  Substantial evidence does not support this finding.  There is nothing in the record to suggest Dr. Gaffield disbelieved Mr. Hoglund's description of his symptoms, or that the doctor relied on those descriptions more heavily than his own clinical examination in reaching his conclusions.  In fact, the doctor's findings about Mr. Hoglund's upper extremity limitations appear to be based on the doctor's physical examination of Mr. Hoglund, not Mr. Hoglund's statements.  *See* Tr. 233.  Accordingly, the ALJ erred.  *See Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ does not provide legitimate reason to reject a medical opinion by questioning the credibility of the patient's complaints where the doctor did not discredit those complaints and supported his ultimate opinion with his own observations).

      Although the reasons the ALJ gave to discount Dr. Gaffield's opinions are not error free, the Court concludes the ALJ's errors were harmless.  This is because despite the errors, substantial evidence supports, the remaining valid reasons the ALJ gave, and thus the ALJ's errors do not negate the validity of the ALJ's ultimate determination that Dr. Gaffield's opinions should be given little weight.  *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162

(9th Cir. 2008).

**B.     The ALJ did not err in evaluating Mr. Hoglund's testimony**

Mr. Hoglund contends the ALJ failed to give legitimate reasons to discount his allegations as to the severity of his impairments.  Dkt. 12 at 3.  The Court disagrees.  The ALJ discounted Mr. Hoglund's testimony for six reasons, all of which were clear and convincing and supported by substantial evidence.  *See Lingenifield v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

First, the ALJ found Mr. Hoglund alleged he was disabled because of "upper extremity problems," but that "while he has a history of surgeries to the right shoulder (4 years ago), right elbow (shattered elbow 15 years ago) and right wrist (6-7 years ago) he was subsequently able to return to work full time as a forklift operator for Boeing, a job that required him to lift as much as 50 pounds." Tr. 27.  Mr. Hoglund does not contend the ALJ erred in finding his claims about his upper extremity problems are inconsistent with his work at Boeing, and thus the ALJ's finding in that regard is affirmed.  Rather, he argues the ALJ erred because her finding failed to account for his RSL symptoms, "which undermined his ability to carry on work activities." Dkt. 12 at 5.  There is, however, nothing in the record that supports this argument, namely, there is no evidence that RSL prevented or limited Mr. Hoglund from performing his work at Boeing.  Implicitly recognizing this, Mr. Hoglund argues he could not perform his work at Boeing because the medication he was taking for RSL caused him to crash his forklift. Dkt. 12 at 5-6.  But as discussed in details above, the argument fails because Mr. Hoglund's limitations cannot be fairly attributed to his medications.  Accordingly, the ALJ's finding is affirmed.

The ALJ next found that since Mr. Hoglund left his job at Boeing in 2009, "he has received minimal treatment for his allegedly disabling arm problems, and he has regularly had

REPORT AND RECOMMENDATION - 7

normal physical examinations of his extremities." Tr. 27.  Mr. Hoglund argues that because he could not afford medical treatment, the ALJ erred in discounting his testimony on the grounds he failed to seek treatment for his arm impairments and anxiety.  Dkt. 12 at 8.  The record does not support this argument.  Mr. Hoglund contends the record shows he "refused referral to specialists because of his inability to afford treatment due to unemployment."[6] *Id.* (citing Tr. 204).  This contention misses the mark because the ALJ did not discount Mr. Hoglund's testimony because he did not see a "specialist"; instead, the ALJ described in great detail all of the treatment Mr. Hoglund received and all of the examination results and concluded that the medical record was inconsistent with Mr. Hoglund's claims.  Tr. 27-29.  Substantial evidence thus supports the ALJ's decision to discount Mr. Hoglund's testimony based on the minimal medical treatment he received.  *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (conservative course of treatment is grounds to undermine claimant's allegations).

Third, the ALJ discounted Mr. Hoglund's testimony because he claimed he lost his job at Boeing dues to a severe impairment—RSL—when, in fact, he lost his job for misusing his medications and crashing his forklift.  Tr. 28-29.  Mr. Hoglund argues the ALJ's finding is "irrational," citing to portions of the record in which he averred that RSL interfered with his ability to operate a forklift.  Dkt. 12 at 9-10.  This argument, however, fails to address the ALJ's finding.  The record shows that in contravention of his doctor's orders, Mr. Hoglund mixed alcohol with medications prescribed only for bedtime use, and as a result of this misuse, passed out and crashed his forklift.  Tr. 202.  Hence, it was Mr. Hoglund's misuse of his medication that caused the crash, not RSL.  Accordingly, substantial evidence supports the ALJ's finding that

---

[6] Mr. Hoglund also relies on a statement he made in 2010 that he was eligible for medical insurance and would seek further treatment for RSL.  Dkt. 12 at 8 (citing Tr. 190-91).  This statement does not further his argument because he has not shown that after obtaining insurance, he in fact sought or obtained more treatment.

REPORT AND RECOMMENDATION - 8

Mr. Hoglund made inconsistent statement about why he lost his Boeing job, and the Court affirms the ALJ.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (ALJ may consider "ordinary techniques of credibility evaluation," including inconsistencies in claimant's testimony and other evidence).

Fourth, the ALJ discounted Mr. Hoglund's testimony about his mental health problems, finding that he "received no mental health treatment, either in the form of counseling or medication"; that when examined by Dr. Sandvick, Mr. Hoglund "complained only of intermittent depression and anxiety, which he acknowledged were secondary to situational stressors"; and that he told Dr. Sandvick that "he did not believe he had any particular psychiatric problems." Tr. 29 (citing to Tr. 206-09).  As Mr. Hoglund's inconsistent statements to the doctor about his mental health symptoms is a valid basis to discount his testimony, the Court affirms the ALJ's finding.  *See Smolen*, 80 F.3d at 1284; *see also* Social Security Ruling 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").

Fifth, the ALJ found that after Mr. Hoglund left his job at Boeing in 2009, he sought and obtained unemployment benefits from Washington State through September 2011. Tr. 29.  In order to receive unemployment benefits, the ALJ found Mr. Hoglund reported to Washington State that he was looking for work and certified on a weekly basis that he was ready and able to work. *Id.*  The ALJ discounted Mr. Hoglund's testimony on the grounds that his representation to Washington State that he could work was inconsistent with his claim to the Social Security Administration that he was disabled and unable to work. *Id.*  Mr. Hoglund argues the ALJ's finding is "irrational" because his certification of readiness to work "does not imply he is able to sustain work," and that he based his certification on limitations which would render him disabled

REPORT AND RECOMMENDATION - 9

under the Social Security Grid Rules. Dkt. 12 at 12. These arguments do not undermine the plain fact that Mr. Hoglund's representations to Washington State cannot be squared with his claim the Social Security Administration that he is disabled. His certification to the state that he could work not only clearly implied he could work but affirmatively represented he had the ability to work. Further, there is no possibility that Mr. Hoglund represented or intended to represent to Washington State that the state should provide him unemployment benefits because he was disabled. Had he made such representations, his state unemployment benefits would have been terminated, a result Mr. Hoglund obviously wanted to avoid. Accordingly, as the ALJ's finding is supported by substantial evidence, the Court affirms the ALJ. S*ee Smolen*, 80 F.3d at 1284 (ALJ may consider inconsistencies in claimant's testimony and other evidence).

And finally, the ALJ discounted Mr. Hoglund's credibility based on his daily activities. Tr. 29-30. As noted above, Mr. Hoglund contends the ALJ erred because he greatly reduced or stopped engaging in his hobbies years ago, and because of ambiguities in the statements he made to Dr. Sandvick about skiing and riding dirt bikes. Dkt. 12 at 14-18. As discussed earlier, Dr. Sandvick's report about Mr. Hoglund's skiing and dirt bike activities is not ambiguous and thus the ALJ's finding is supported by substantial evidence. The Court accordingly finds the ALJ reasonably concluded that the evidence showed Mr. Hoglund's activities were inconsistent with his claimed limitations.

## CONCLUSION

For the foregoing reasons, the Court recommends **AFFIRMING** the Commissioner's decision and **DISMISSING** the case with prejudice. A proposed order accompanies this Report and Recommendation. Objections, if any, to this Report and Recommendation must be filed and served no later than **December 26, 2013.** If no objections are filed, the matter will be ready for

1 the Court's consideration on **January 3, 2014.**  If objections are filed, any response is due within
2 14 days after being served with the objections.  A party filing an objection must note the matter
3 for the Court's consideration 14 days from the date the objection is filed and served.  Objections
4 and responses shall not exceed **eight** pages.  The failure to timely object may affect the right to
5 appeal.

6       DATED this 11th day of December, 2013.

                                        BRIAN A. TSUCHIDA
                                        United States Magistrate Judge

REPORT AND RECOMMENDATION - 11